W. C. RUTHERFORD, *Plaintiff in Error,* v. THE STATE OF FLORIDA, *Defendant in Error.*

Opinion Filed August 10, 1918.

Petition for Rehearing Denied November 4, 1918.

1. Where a person is engaged in soliciting membership in a society for which he receives a fee from the person solicited if he is accepted, and such society had previously entered into an arrangement with a fraternal benefit association that is not authorized to do business in the State of Florida, he in effect is soliciting membership in such fraternal benefit association.

2. Where the act of joining a society *ipso facto* enrolls a person in a fraternal benefit association not authorized to do business in Florida, one who is engaged in soliciting membership in such society and receives compensation for his services from the persons solicited, is soliciting membership in the fraternal benefit association.

Writ of Error to Court of Record for Escambia County; A. G. Campbell, Judge.

Judgment affirmed.

*Blount* & *Blount* & *Carter,* for Plaintiff in Error;

*Van C. Swearingen,* Attorney General, and *C. O. Andrews,* Assistant, for the State.

BROWNE, C. J.—W. C. Rutherford was convicted in the Court of Record of Escambia County for soliciting membership for the Western Funeral Benefit Association, a fraternal association that is not authorized to do business in the State, and seeks reversal here on writ of error. A jury was waived and the case tried on an agreed statement of facts, which is as follows:

"That the defendants are organizers and agents of the Order of Owls and members of various local nests of that order; that the persons solicited by said organizers who become members of the Owls are issued death benefit certificate by the Western Funeral Benefit Association, a fraternal benefit association of St. Louis, Missouri, which association has not complied with the laws of Florida relative to transacting business in said State, if the local Nest of Owls, of which they are members, by vote decides to enroll its members with said Western Funeral Benefit Association; that said local Nest of Owls has held several meetings and by vote accepted divers persons solicited by each of said defendants as members and rejected others of such persons as members, and said local Nest of Owls at a meeting theretofore has voted to enroll said local Nest for insurance benefits in said Western Funeral Benefit Association, but nothing further has been done,

no enrollment forwarded to the Western Funeral Benefit Association and no certificates issued by said Association to any member of said Nest, or to the Nest; that the defendants used as an argument for membership in the Owls to those persons whom they solicited to join statements as to the benefits and desirability of insurance in the Western Funeral Benefit Association, stating that for seventy-five cents a month the local Nest dues a $250.00 death benefit certificate in the Western Funeral Benefit Association could be procured, and that for fifteen cents more per month, making a total of ninety cents per month the local dues would be paid and a $500.00 death benefit certificate could be procured in the Western Funeral Benefit Association if the local lodge so voted; that the defendants produced to various persons solicited by them sample copies of the death certificate issued by the Western Funeral Benefit Association; that the pamphlet attached to this statement was circulated by the defendants and copies thereof given by them to persons solicited by them; that the local Nest of the Order of Owls in Pensacola is a secret order within the exceptions to the laws of Florida relating to fraternal benefit insurance associations; that the defendants collected from persons solicited to join the order of Owls who desired to join $6.00 and issued receipts as per form attached hereto; that $6.00 was the compensation to the defendants as organizers and no part of this amount goes to the local or supreme lodge or Western Funeral Benefit Association; that the person making application is voted upon by the local nest and if he is rejected the $6.00 is returned to him; that defendants are not employed by the Western Funeral Benefit Association, nor paid anything by said Association.

"That W. G. Cochran, a citizen of Pensacola, will testi-

fy that A. D. Alvin stated to him that he represented the Western Funeral Benefit Association when soliciting him to join the Owls. Alvin will testify that he did not tell Mr. Cochran this, but will admit that he solicited Mr. Cochran to join the Owls."

It is contended that the finding is not supported by the evidence, and is in disregard of the section of the statute exempting certain secret orders from its provisions.

It is true that from the agreed statement of facts, it appears that the Order of Owls is not engaged in writing insurance for its members, but as the information does not charge the Owls with violating the law, the exemption claimed in Section twenty-nine of the Act is not applicable to the facts in this case.

The Plaintiff in Error was soliciting membership in the Owls, and the nest for which he was soliciting had "theretofore voted" to enroll its members for insurance benefits in the Western Funeral Benefit Association. He informed persons whom he solicited, that upon payment of the local nest dues of 75 cents a month, a $250.00 death benefit certificate in the Western Funeral Benefit Association could be procured, and that for 15 cents more per month a $500.00 death benefit certificate could be procured.

The dues of a member of the Owls are seventy-five cents a month, upon payment of which the member procures a death benefit certificate in the Western Funeral Benefit Association for two hundred and fifty dollars. He may, however, procure a death benefit certificate for five hundred dollars upon payment of fifteen cents more a month, but this does not, like the provision for a death benefit of two hundred and fifty dollars, follow as a necessary result of joining the Owls. The provision for a two hun-

dred and fifty dollar death benefit certificate attaches to membership in the Owls without any further act of the members, and all who became members of the local Nest upon the solicitation of the defendants, procured insur-ance in the Western Funeral Benefit Association, by the mere act of joining the Owls.

The Plaintiff in Error concedes that it would be a violation of law to solicit directly for membership in the Western Funeral Benefit Association, but contends that the statute does not prohibit soliciting persons to join the Owls, notwithstanding that by so doing they become enrolled in the Funeral Association.

The local Nest of Owls of Pensacola having arranged to enroll all of its members in the Western Funeral Benefit Association, and the Plaintiff in Error having solicited persons to join such local Nest, we cannot avoid the conclusion that he was, indirectly if not directly soliciting membership in the Western Funeral Benefit Association, for its follows as a consequence of persons joining such Nest of Owls, that they thus became insured in the Western Funeral Benefit Association.

We think the evidence justified the conviction, and the judgment is affirmed.

WHITFIELD, ELLIS AND WEST, J. J., concur.

TAYLOR, J., dissents.

TAYLOR, J., *dissenting.*—I am unable to concur in the opinion of the majority of the court in this case, for the following reasons: The defendant was tried and convicted upon an agreed stipulation of facts. By this stipulation, it was expressly agreed that the defendant was not in the employ of the interdicted foreign insurance company;

that he received no salary or other remuneration from such company and did no service for them, but that he was organizer for the secret benevolent order of Owls, and received his pay from the new members alone, that he procured for that secret order. The agreed facts also showed that the Lodge, or "Nest," as it is called, of Owls for whom the defendant worked, had some agreement with the interdicted insurance company by which such members of such Lodge or Nest of Owls as were approved by such Lodge or Nest received from such foreign insurance company a certificate of death benefits from such insurance company.

The statute, it is true, prohibits either direct or indirect employment by or performance in this State of any services for such interdicted insurance company, interdicted because of non-compliance with the laws regulating foreign insurance companies. But, I do not think that the *incidental* benefits that accrue to such insurance company from its wholesale insurance of the members of this Lodge or Nest of Owls, is such an indirect rendering of service for such insurance company by this defendant when he in good faith simply solicits men to join or become members of such order of Owls, as is contemplated by the statute. To violate a criminal law, there must be a criminal intent.

If the defendant was in good faith exerting his efforts solely in the interest of procuring membership in the order of Owls and had no sort of connection with or interest in such insurance company, and had no intention of rendering it any service in what he did to procure members for the order of Owls, then I do not think that the unintended and purely *incidental* benefits that might have accrued to such insurance company from its contract with such Nest of Owls to insure all or some of its

recommended members, is a violation of the statute. If it is then every individual who of his own accord makes application to such Nest of Owls to become a member thereof, renders, *pro tanto,* the same *incidental* service to such interdicted insurance company. In the absence of any intimation or showing in the case that the order of Owls is an invention of and in reality a silent partner in the business of such foreign insurance company, I do not think that the defendant is shown to have violated the law.